GLADYS F. WHITMARSH *vs.* ALBERT A. GALLOTTA,

*Tax Assessor.*

ROBERT H. WHITMARSH *vs.* SAME.

MAY 28, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. These are petitions for relief from tax assessments on intangible personal property alleged to have been illegally assessed against the petitioners by the tax assessor of the city of Providence. The cases were tried together before a justice of the superior court who thereafter filed a decision in which he granted each petition on the ground that at the time those taxes were assessed the petitioners were not subject to taxation in Providence on such property. The respondent tax assessor excepted to each decision and has brought the cases here by his bills of exceptions.

The facts are undisputed. The petitioners are Robert H. Whitmarsh and Gladys F. Whitmarsh, husband and wife. Since May 23, 1952 they have had their actual place of abode in the town of Little Compton in this state. For over thirty years before that date they were inhabitants of the

city of Providence and paid taxes there. The last tax bill which they paid without protest was for taxes assessed against them as of December 31, 1951. The petitioners' counsel refers to those taxes as the "1952 taxes."

Shortly after moving to Little Compton petitioners notified the tax assessor of Providence of that fact. Nevertheless he assessed against them, as of December 31, 1952, the intangible personal property taxes that are involved in the instant petitions. He acted pursuant to a resolution of the city council approved on May 8, 1953 ordering a tax to be assessed on all ratable real and personal property as of December 31, 1952. The assessor assessed this tax against and apportioned it among all owners of ratable personal property who had their actual place of abode in Providence for the larger portion of the twelve months next preceding the first day of April 1952.

As his authority for such action he relies upon general laws 1938, chapter 30, §9, paragraph Twelfth, which reads as follows: "Except as otherwise provided by this section, or by any other law, all ratable personal property, both tangible and intangible, shall be taxed to the owner thereof in the town in which such owner shall have had his actual place of abode for the larger portion of the 12 months next preceding the first day of April in each year." He construed that language to refer to personal property which was assessed to an owner on December 31, 1952 as being "taxed to the owner thereof" at that time.

The petitioners contend that such construction is erroneous. They argue in effect that the assessment on that date is of no consequence; that the taxes assessed as of that date are "1953 taxes," and that the personal property in question was not taxed to them as the owners thereof until the assessor certified the tax roll to the collector of taxes on June 15, 1953. Therefore they urge that, under §9, paragraph Twelfth, the assessor should have determined the incidence of such taxes as far as petitioners were concerned

from the first day of April in that year and not in 1952. They point out that their actual abode in Providence as thus measured falls far short of the "larger portion of the 12 months next preceding the first day of April" in the calendar year in which the personal property in question was taxed to them and therefore they are clearly not liable to such taxation.

We do not agree with that view. In the attractive light in which petitioners have presented it in their brief and the trial justice has approved it in his decision that view has an appealing plausibility, but we are constrained to say such is not the law as it is written. It is that law we must apply notwithstanding a more practicable or desirable result could probably be achieved by adopting petitioners' construction. In our opinion §9, par. Twelfth, needs little if any construction. In any event its language is too plainly contrary to admit of petitioners' construction. And this appears to be especially true when we examine other sections of the tax statutes. Indeed as we read those statutes in their present form it is difficult to see how the assessor could have lawfully omitted petitioners from the tax roll which he was required to certify to the tax collector not later than the fifteenth day of June. Public laws 1949, chap. 2330, sec. 6½.

Formerly, before 1919, there appears to have been some confusion in determining from the language of our earlier statutes at what time personal property was "taxed to the owner thereof." See *Matteson* v. *Warwick & Coventry Water Co.,* 28 R. I. 570. However, in that case this court endeavored to dispel some of that confusion by making the following statement at page 577: "In assessing a tax upon the property liable to taxation in any town or city two references to time must inevitably be made. 1st. Some point of time must be taken to which the values of all the property shall be referred simultaneously, and the value of each piece of property at that point of time must

be estimated and affixed to it. 2nd. Some period of time must be occupied by the assessors in the work of receiving statements, making the estimation of values, reckoning the tax and writing out and filing the roll. Both of these times may be called the 'time of making the assessment' or the 'time for assessing the tax,' but one is important to the tax-payer, and the other is not. It is obviously immaterial to the tax-payer when or during what period of time the work of the board of assessors is performed, except that portion of it which consists in receiving his return, but is of the utmost importance to him to have his property valued as of the same time with other property in the town, and to know the exact time the assessors had in mind when fixing its value."

The reasonable deduction from such statement is that the ratable personal property of the town is actually "taxed to the owner thereof" when the first assessment is made simultaneously against all such owners. If any confusion remained after that statement was made by the court on January 22, 1908 it must certainly have been removed by the enactment of P. L. 1919, chap. 1735. Section 1 of that chapter expressly provides that the tax on the ratable property of the town shall be assessed "by the assessors of the town as of the fifteenth day of June in each year at twelve o'clock noon, said date being known as the date for assessment of town taxes." And sec. 2 requires that "the valuation of such ratable property shall be made as of the date for assessment provided in Section 1 of this Chapter."

Prior to that enactment each town was permitted to fix its own time of assessment and consequently such time was fixed differently in different towns, in one instance as early as February and in another as late as December. In other words, there was no uniformity. After the enactment of chap. 1735 the fifteenth day of June in each year became assessment day throughout the state. We assume that the assessors thereafter considered that date as the one on

which the ratable property of the town was "taxed to the owner thereof." Such an assumption is fully warranted because they were expressly required by sec. 2 of that chapter to value said property as of that date.

In 1949 the assessment day was changed to the thirty-first day of December at twelve o'clock noon in each year. P. L. 1949, chap. 2330. That chapter also amended certain sections of chapters 30 and 31 of the general laws of 1938, some of which amendments petitioners rely upon to support their view. None of those amendments, however, makes any change that materially affects the question here. Section 9, paragraph Twelfth, remains the same and sec. 4 of chap. 31 still provides that the property shall be valued "as of the date of assessment provided in section 1 of this chapter." P. L. 1949, chap. 2330, sec. 4. That chapter, it may be noted here, consists largely of certain amendments designed to effect greater precision in phraseology and also of amendments prescribing specific directions to the assessors as to the manner in which they shall proceed with their work of valuation and as to the precise time they shall complete it. In our opinion none of those amendments lends any support to petitioners' contention.

In the cases at bar the assessor correctly considered December 31, 1952 as the day on which petitioners' intangible personal property was taxed to them in accordance with the mandate of the aforesaid sec. 4. In valuing such property he was bound by that section to assess its valuation as of that date. Whether the taxes thus assessed in 1952 are "1952 taxes" or, because they are payable in 1953, are "1953 taxes," is of no importance in determining petitioners' tax liability. Under our system of taxation taxes are not assessed *for* any particular year. *Industrial Trust Co.* v. *Wilson*, 58 R. I. 378. It has been usually accepted that a general tax is not levied exclusively for future expenses, "but for the expenses of the current year, incurred and to be incurred." *Greene* v. *Gardiner*, 6 R. I. 242, 245. This,

we think, is the correct view. But whether the taxes here were to produce revenue for expenditures in 1953 or partly in that year and partly in 1952 is of no consequence in applying §9, paragraph Twelfth.

The important questions are: In what year were they assessed? Is such assessment year to be deemed the time when the property was *taxed to* the owners thereof? Since the first question is answered by the undisputed record and since we have already answered the second question in the affirmative, the conclusion necessarily follows that the tax assessor correctly used April 1, 1952 as a base in determining whether petitioners had their actual place of abode in Providence for the larger portion of the twelve months next preceding that date. This latter fact being undisputed, their intangible personal property was rightfully taxed to them and they are legally liable for such taxes.

The respondent's exception to the decision granting the petition in each case is sustained, and each decision is reversed. The petitioner in each case may appear before this court on June 6, 1956 to show cause, if any he or she has, why each case should not be remitted to the superior court for entry of judgment for the respondent.

*Fred A. Otis*, for petitioners.

*William E. McCabe*, City Solicitor, *James J. Corrigan*, Ass't City Solicitor, for respondent.